BARKETT, Circuit Judge, specially concurring:

I concur fully with the majority's opinion affirming the appellants' convictions for mail fraud and bribery and Castro's conspiracy conviction under RICO, and concur in affirming Boehme's, Lechtner's, and Luongo's conspiracy convictions but for different reasons. With respect to Boehme's, Lechtner's, and Luongo's conspiracy convictions, I do not think the government proffered sufficient evidence to prove the existence of the agreement necessary to prove the single overarching conspiracy charged in the indictment. Instead, the government only proved the existence of multiple independent conspiracies each of which involved one of the defendants. However, because the variance between the allegations contained in the indictment and the proof adduced at trial did not affect defendants' substantial rights, I would affirm their convictions on the RICO conspiracy charge.

To convict a defendant for conspiracy in violation of RICO, the defendant must (1) have been associated with (2) an enterprise engaged in interstate commerce, and (3) must have conducted or participated in the conduct of the enterprise's affairs (4) through a pattern of racketeering. See 18 U.S.C. § 1962(c); see also U.S. v. Bright, 630 F.2d 804, 829 (5th Cir. 1980).[1] To prove the existence of a single overarching conspiracy, rather than multiple independent conspiracies, the government must show that the conspirators agreed to an overall objective. U.S. v. Sutherland, 656 F.2d 1181, 1192-93 (5th Cir. Sept. 1981) (as in any other conspiracy, under RICO the government must prove the existence of an "agreement on an overall objective"); see also U.S. v. Valera, 845 F.2d 923, 929 (11th Cir. 1988). Under RICO, the government need not show that the conspirators agreed to commit specific crimes or accomplish common goals; it is enough that they each agreed to participate in a conspiracy to commit the substantive RICO offense of affecting, directly or indirectly, the affairs of the enterprise through a pattern of racketeering. Sutherland, 656 F.2d at 1192. Sutherland warns,

---

[1]    In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), this circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

however, that it is not enough that the defendants were simply participating in the conduct of the same enterprise, or had knowledge of other criminal activity; the gravamen of a RICO conspiracy, like any other conspiracy, is that the defendant not only knows about the conspiracy, but also <u>agrees to participate</u> in it to accomplish an overall objective.[2] <u>Id.</u> at 1192-93; <u>see also</u> <u>Valera</u>, 845 F.2d at 929.

To show that a defendant agreed with others to participate in the affairs of the enterprise through a pattern of racketeering, the government must prove either (1) an explicit agreement, or (2) in the absence of direct evidence, that the <u>nature</u> of the conspiracy is such that the defendant must <u>necessarily</u> have known that others also were conspiring to participate in the same enterprise through a pattern of racketeering activity. <u>Valera</u>, 845 F.2d at 929 (11th Cir. 1988); <u>Sutherland</u>, 656 F.2d at 1194. Under (2), an agreement to participate in a single conspiracy can be inferred because the participation of others is necessary for the defendant to benefit from his own criminal activity. Thus, for example, an agreement can be proved circumstantially when the defendant is a member of an enterprise specifically formed for illegal purposes ("association in fact"), <u>see, e.g.,</u> <u>U.S. v. Church</u>, 955 F.2d 688 (11th Cir. 1992); <u>U.S. v. Elliott</u>, 571 F.2d 880 (5th Cir. 1978), or is a link in a chain of criminal activity, <u>see, e.g.,</u> <u>Valera</u>, 845 F.2d 923, because the <u>inherent nature</u> of those conspiracies <u>necessarily</u> involve other participants.

The indictment in this case charged Boehme, Lechtner, and Luongo, attorneys practicing in and associated with the Eleventh Judicial Circuit, with agreeing to participate in the affairs of the Circuit Court of the Eleventh Judicial Circuit, through a pattern of racketeering, to wit, Extortion, Conspiracy to Commit Extortion and Attempt to Commit Extortion, Bribery,

---

[2] It's worth noting that Congress's express purpose in enacting the Organized Crime Control Act of 1970, of which RICO is a part, was "to seek the eradication of <u>organized</u> crime . . . by establishing new penal prohibitions, and by providing enhanced sanctions and new remedies to deal with the unlawful activities of those engaged in <u>organized</u> crime." James F. Holderman, <u>Reconciling RICO's Conspiracy and "Group" Enterprise Concepts with Traditional Conspiracy Doctrine</u>, 52 U. Cin. L. Rev. 385, 386-87 (1983) (quoting Pub. L. No. 91-452, 84 Stat. 922, 923 (1970)) (emphasis added).

Unlawful Compensation or Reward for Official Behavior, Conspiracy to Commit Murder, Mail Fraud, and Laundering of Monetary Instruments, with the object of corruptly utilizing the Circuit Court for personal financial gain. Each was charged with committing at least two predicate acts in furtherance of the conspiracy, namely, on numerous occasions paying kickbacks to judges in exchange for appointments as Special Assistant Public Defenders.

Because the nature of the kickback activities did not <u>necessarily</u> involve anyone other than the attorney and judge to which the kickbacks were paid, the government was required to prove that each of the defendants <u>explicitly agreed</u> to participate in a larger conspiracy--one that involved people outside of the individual kickback deals--to conduct the affairs of the Circuit Court through a pattern of racketeering. At trial the government proffered sufficient evidence to show that each of the charged attorneys was a participant in a conspiracy involving his/herself, Judge Gelber, Judge Davis, and Margaret Ferguson. However, the evidence was insufficient to show that Luongo, Boehme, or Lechtner <u>explicitly agreed</u> to participate in a conspiracy in which others also were corruptly utilizing the Circuit Court through a pattern of racketeering.[3] With respect to Luongo, the government did not present any evidence to suggest he was even aware that there was any other criminal activity afoot in the Circuit Court. Lechtner was advised that the payment of kickbacks on court appointments was "something that's being done." Similarly, Boehme was informed that he would be placed on the "preferred list" for court appointments. These statements alone, while possibly establishing knowledge of other criminal activity within the Circuit Court, are insufficient to establish beyond a reasonable doubt that Boehme and Lechtner explicitly agreed to accomplish anything more than the receipt of court appointments for their own monetary gain.[4] Nothing suggests that they were aware of the contours or scope of

---

[3]    We review the jury's verdict for sufficiency of the evidence <u>de novo</u>, but view the evidence in the light most favorable to the government and determine whether a reasonable factfinder could find guilt beyond a reasonable doubt. <u>See</u> <u>United States v. Kelly</u>, 888 F.2d 732 (11th cir. 1989).

[4]    Castro actually solicited the participation of new attorneys in Judge Gelber's kickback scheme, and thus a reasonable trier-of-fact could find that Castro agreed to participate in a

3

the conspiracy as charged in the indictment, or that they would be interested in or benefit from the similar activities of others. To the contrary, they were interested only in profiting from their individual, clearly-defined wrongful acts, and neither benefitted from or was dependent upon the larger conspiracy. Although conspirators need not know their fellow conspirators or be aware of all the details of a conspiracy, U.S. v. Pepe, 747 F.2d 632, 659 (11th Cir. 1984), it is equally true that "one who embarks on a criminal venture with a circumscribed outline is not responsible for acts of his co-conspirator which are beyond the goals as the defendant understands them." Bright, 630 F.2d at 834 n.52. Therefore, I believe that there was a variance between the single conspiracy charged in the indictment and the multiple conspiracies proved at trial. See Sutherland, 656 F.2d at 1194 (finding multiple conspiracies rather than a single conspiracy where indicted co-conspirators were involved in similar schemes to bribe the same public official, but where there was no agreement among them); Bright, 630 F.2d at 834 (same).

Luongo, Boehme, and Lechtner are entitled to a new trial, however, only if they can show that the variance affected their substantial rights. Sutherland, 656 F.2d at 1190 n.6., 1195. In Berger v. United States, 295 U.S. 78, 55 S.Ct. 629 (1935), the Supreme Court held that a variance between a single conspiracy charged in an indictment and multiple conspiracies proved at trial is fatal to a conviction only if it "affects the substantial rights" of the accused. Id. at 81-81, 55 S.Ct. at 630-31. In general, a defendant's substantial rights are not affected merely because other people are not guilty of the same conspiracy in which the defendant was involved. Instead, the primary dangers resulting from a variance between the indictment and proof at trial are (1) the accused will not be able to present an adequate defense because of inadequate notification as to the charges, (2) the jury will transfer guilt among the defendants in a joint trial, and (3) the accused may be prosecuted for the same offense later. Id.

In Sutherland, the Fifth Circuit focused on three factors to determine whether a variance has affected an accused's substantial rights. First, the court should look to the number of

conspiracy involving numerous participants to corruptly utilize the Circuit Court.

4

defendants involved in the joint trial and the number of conspiracies actually proved at trial. Id. at 1196. The greater the number of defendants and conspirators, the more complex the case, creating a greater risk of jury confusion and transference of guilt from one defendant to another. Second, the court should examine whether evidence of a co-defendant's guilt, which has no bearing on the defendant's guilt, has been kept separate and distinct from evidence material to the defendant's guilt. Id. Third, a court should examine whether the government introduced overwhelming evidence of guilt as to each defendant, and whether that evidence would have been admissible had separate trials been held. Id.

In this case, there were four defendants and the government proved the existence of four similar conspiracies. This case was not so complex as to render it likely that the jury transferred guilt among the defendants. Compare Berger, 295 U.S. at 82-83, 55 S.Ct. at 631 (no substantial rights affected where there were four defendants and two distinct conspiracies) with Kotteakos v. U.S., 328 U.S. 750, 766-69, 66 S.Ct. 1239, 1249-50 (1946) (substantial rights affected where there were thirty-two defendants and eight distinct conspiracies). Second, evidence as to each defendant's role in the kickback schemes was distinct enough so that the jury was unlikely to use evidence of one defendant's guilt against another defendant. Although the similarities between each of the defendant's activities may have made an assertion of innocence more difficult for the jury to believe, we find that the evidence as to the underlying crimes was sufficiently distinct and separate for the jury to consider each defendant's guilt independently. Similarly, the evidence as to each defendant's involvement in the kickback activities was more than sufficient to find them guilty of the individual conspiracies.

In sum, although I believe that a variance existed between the single conspiracy charged in the indictment and the multiple conspiracies proved at trial, the appellants' substantial rights were not affected, and thus reversal is not required. Therefore, I would affirm their convictions on all counts.